UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

James Aloysious Wieseler,

        Petitioner,               Court File No. 18-cv-217 (JRT/LIB)

v.

                         **REPORT AND RECOMMENDATION**

Eddie Miles,

        Respondent.

This matter came before the undersigned United States Magistrate Judge pursuant to a referral for report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b) and Local Rule 72.1, and upon Petitioner James Aloysious Wieseler's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, [Docket No. 1].

For the reasons set forth below, the Court recommends that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED**, and this action be **DISMISSED** without prejudice for lack of subject-matter jurisdiction.

### I. BACKGROUND AND STATEMENT OF FACTS

On August 16, 2007, in Minnesota State District Court, Petitioner entered pleas of guilty pursuant to North Carolina v. Alford, 400 U.S. 25 (1970), to one count of felony criminal sexual conduct involving his grandson and one count of felony incest. (Exh. C, [Docket No. 9-1], 14, 26-27). At the August 16, 2007, plea hearing, the following exchange occurred:

> MS. VALENTINE [Defense Counsel]: . . . I had talked to Mr. McDermott [the prosecutor] about the fact that because this is an Alford Plea and that Mr. Wieseler is not admitting to sexual contact with his grandson, that – um – if he is engaged in a treatment program and a requirement of that program is an

>   admission to that charge, that would not be necessarily a violation of his probation if he failed to admit.
>   THE COURT: You all right with that Mr. McDermott?
>   MR. MCDERMOTT: It [will] be sufficient your Honor.
>   THE COURT: All right well Mr. Wieseler [then] based on what I've heard I will accept your plea[s of guilty].

(Id. at 27-28).

On November 26, 2007, the Minnesota State Court District Judge sentenced Petitioner to consecutive sentences of 18 months' imprisonment for the incest conviction and 27 months' imprisonment for the criminal sexual conduct conviction. (Exh. D, [Docket No. 9-1], 32, 55-57). The Minnesota State Court District Judge then stayed execution of the sentence and placed Petitioner on probation for up to 25 years. (Id. at 56-57). One of the conditions of Petitioner's probation was attending and completing a sex offender treatment program. (Id. at 57).

Petitioner enrolled in the CORE sex offender treatment program ("the CORE program"), but in July 2008, he was terminated from the program "'possibly for refusal to admit to sexually abusing his grandson.'" (Exh. F, [Docket No. 9-1], 65; Exh. W, [Docket No. 9-1], 177). Accordingly, on November 21, 2008, a Minnesota State District Court Judge revoked Petitioner's probation. (Exh. G, [Docket No. 9-1], 72-73). The sentencing orders and warrants of commitment ordered Petitioner to serve a total of 30 months in prison, with 9 months of supervised release and 10 years of conditional release[1] after completion of the terms of imprisonment. (Id.).

---

[1] "Supervised release is the current term for the release practice formally known as parole. For felony offenses committed on or after August 1, 1993, a period of supervised release follows the term of imprisonment. The term of imprisonment is presumptively equal to two-thirds of the executed sentence, with the remaining time to be served as supervised release subject to alteration for in-prison disciplinary offenses. A person on supervised release remains in the state's legal custody and is subject to re-incarceration for breach of a condition of release. Pursuant to this statutory framework, when [Petitioner] completed his term of imprisonment . . . , a portion of his sentence remained to be served as supervised release." . . . The conditional release statute requires that persons convicted of specified criminal sexual conduct crimes are placed on conditional release for a 5 or 10 year period following the sentence imposed for their offense, less the time served on supervised release. . . . [L]ike supervised release, if a convicted

On May 16, 2010, Petitioner was placed on supervised release. (Exh. I, [Docket No. 9-1], 78; Exh. J, [Docket No. 9-1], 82). Again, as part of the conditions of his supervised release, Petitioner was required to complete a sex offender treatment program. (Id.). Petitioner re-enrolled in the CORE program. (Id.). It was explained to Petitioner that part of the CORE program was admitting to offense behavior and taking responsibility for that behavior. (Id. at 82-83). Petitioner refused to admit any wrongdoing with his grandson. (Id.). Accordingly, Petitioner was terminated from the CORE program. (Exh. K, [Docket No. 9-1], 86).

On June 2, 2010, Petitioner's supervised release was revoked for failure to complete a sex offender treatment program as required by the conditions of his supervised release, and he was returned to prison for a minimum of 120 days. (Id.).

On August 23, 2011, Petitioner was again placed on supervised release, again upon the condition that he "successfully complete sex offender programming." (Exh. L, [Docket No. 9-1], 90). Petitioner was referred to the CORE program in December 2011, but at an intake appointment for the CORE program on January 4, 2012, Petitioner refused to sign the intake paperwork to enter the treatment group, stating that he was not required to "'admit anything.'" (Id. at 91).

In August 2012, Petitioner was again referred to sex offender treatment, and was directed by the Intensive Supervised Release ("ISR") officer supervising his release to enter and participate in the CORE program. (Id. at 92). Apparently, Petitioner did not comply with this direction, as the record now before the Court reflects that Petitioner was referred to the CORE program another time on September 27, 2012. (Id.). However, at the January 3, 2013, intake

---

sex offender violates a condition of release, the commissioner may re-incarcerate the offender." State v. Shwartz, 628 N.W. 2d 134, 139 (Minn. 2001) (emphasis added).

appointment for the CORE program, Petitioner refused to sign the intake paperwork, so he was unable to begin treatment. (Id.).

On March 27, 2013, Petitioner's supervised release was restructured, with reinforcement of the requirement that Petitioner successfully complete sex offender programming. (Exh. M, [Docket No. 9-1], 97). Petitioner was then allowed to continue on supervised release. (Id. at 97-98).

Thereafter, Petitioner initiated contact with his daughter, had contact with minor children, and did not follow the directions of his ISR officer, all of which violated the conditions of his supervised release. (Exh. N, [Docket No. 9-1], 100-01). Accordingly, on July 23, 2014, Petitioner's release[2] was revoked, and he was returned to prison for a minimum of 720 days; Plaintiff was directed to engage in sex offender treatment while in prison. (Id.; See, also, Exh. O, [Docket No. 9-1], 109). At that time, Petitioner's projected release date was June 28, 2016. (See, Exh. O, [Docket No. 9-1], 109). However, on June 20, 2016, the Minnesota Department of Corrections' Hearings and Release Unit extended Petitioner's projected release date by another year because he had failed to start sex offender programming, despite being offered the chance to do so in December 2014. (Id.).

In August 2016, Petitioner filed a petition for habeas relief in Minnesota State Court. (Exh. Q, [Docket No. 9-1], 123). In relevant part, Petitioner asserted that because, Plaintiff believed, the Minnesota State District Court had ordered at his plea hearing that refusal to admit to sexually abusing his grandson would not result in a violation of the terms of his probation, his current detention was unlawful. (Id. at 126-133). He asked the Minnesota state court to overturn

---

[2] It is not clear to the Court whether Petitioner had successfully completed his supervised release and was thus on conditional release, or whether Petitioner was still serving the supervised-release portion of his sentence. (Compare, Exh. W, [Docket No. 9-1], 178 (Minnesota State Court of Appeals opinion stating: "In July 2014, the DOC revoked Wieseler's conditional release . . . ."), with Exhibit BB, [Docket No. 9-1], 208 (setting forth Petitioner's "Release Status" in 2018 as "Intensive Supervised Release")).

his convictions, vacate a restraining order that prohibited him from contacting his daughter, and/or correct his projected release date. (Id.).

Minnesota State District Court Judge Christine A. Long denied Petitioner's petition for habeas relief. (Exh. S, [Docket No. 9-1], 149). With respect to Petitioner's argument based on the colloquy at his plea hearing, Judge Long held that argument "fail[ed] in two ways: there was no pronounced condition of probation that his probation would not be violated for failing to make such an admission; and, more on point, Petitioner [is] not on probation and has not been on probation since his sentence was executed years ago." (Id. at 153). Rejecting Petitioner's other asserted bases for relief, Judge Long held that Petitioner had failed to establish his entitlement to habeas relief; accordingly, she denied his petition for habeas relief. (Id.).

Petitioner appealed to the Minnesota State Court of Appeals "the portion of the order of the District Court denying him Habeas relief from the 365 days of extended incarceration imposed . . . for 'refusing treatment.'" (Exh. T, [Docket No. 9-1], 155). He argued that "extending" his imprisonment because of his refusal to admit to the sexual abuse of his grandson violated his right to substantive due process in light of the colloquy at his plea hearing, which he interpreted to mean that it had been settled that he would not be required to admit his offense. (Id. at 155-56).

On July 3, 2018, the Minnesota State Court of Appeals affirmed the denial of Petitioner's state petition for habeas relief, holding that Petitioner "has no protected liberty interest in denying the underlying conduct from his conviction of second-degree criminal sexual conduct after entry of his Alford plea" and that "a projected release date does not guarantee an inmate's release." (Exh. W, [Docket No. 9-1], 175-76, 180-81).

5

Petitioner sought review by the Minnesota State Supreme Court. (Exh. X, [Docket No. 9-1], 183-87). His request was denied on September 19, 2017. (Exh. Z, [Docket No. 9-1], 198).

Meanwhile, Petitioner's projected release date was further extended past June 28, 2017, due to reasons unrelated to sex offender treatment. (Exh. AA, [Docket No. 9-1], 200, 202, 204-05). Specifically, the projected release date was extended because of an unavailability of space in a facility which could meet both Petitioner's needs and the level of supervision required. (Id.).

On January 25, 2018, Petitioner initiated the case presently before this Court by filing his Petition for Writ of Habeas Corpus. [Docket No. 1]. Petitioner informed the Court that his projected release date was February 1, 2018, and he "fear[ed] the [Minnesota Department of Corrections] will once again try to force [him] to admit in treatment to an offense" Petitioner maintains he did not commit. (Brief in Supp., [Docket No. 3], 1). Petitioner again asserts that the discussion at his plea hearing, as quoted above, means that he cannot be found to violate the terms of his "probation" by refusing to admit the sexual abuse of his grandson. (Id.). On January 31, 2018, the Court issued an Order directing Respondent to file a Response to the Petition within 14 days. [Docket No. 4].

While the time for Respondent to file his Response was pending, an appropriate residence for Petitioner in the community was confirmed, and Petitioner was placed on supervised release as of February 1, 2018. (Exh. BB, [Docket No. 9-1], 208, 210; Notice of Change of Address by Petitioner, [Docket No. 6]).

Respondent filed his Response on February 13, 2018, and he argued therein that Petitioner's current Petition for Writ of Habeas Corpus (1) seeks relief which may not be achieved through a petition for writ of habeas corpus, so this Court lacks subject-matter

6

jurisdiction; (2) is at least partially not ripe for review; and (3) contains a claim which are unexhausted in state court. (Response, [Docket No. 8], 8-9).

Petitioner filed his Reply to the Response on February 23, 2018. [Docket No. 11]. The Reply consists of one page reasserting his argument regarding the plea hearing colloquy, and an 8-page document written in June 2016 that purports to reiterate events which occurred from 2007 to 2016. (Id.).

## II.    DISCUSSION

Initially, the Court notes that the grounds for habeas relief which Petitioner intends to assert are not entirely clear from his pleadings before this Court. However, the Court has a duty to construe pro se habeas petitions liberally. See, Spencer v. Haynes, 774 F.3d 467, 471 (8th Cir. 2014). Thus, "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the [petition] in a way that permits the layperson's claim to be considered within the proper legal framework." Jackson v. Nixon, 747 F.3d 537, 544 (8th Cir. 2014).

Liberally construed, the Petition presently before the Court contains two main points: (1) Petitioner's fear that during his conditional release, the DOC will find that his refusal to admit to the sexual abuse of his grandson is a violation of the terms of his release and thus revoke his conditional release and return him to prison; and (2) Petitioner's argument that the 1-year extension of his projected release date in June 2016, was improper in light of the colloquy at the August 16, 2007, plea hearing as quoted above. (Brief, [Docket No. 3]). However, this Court lacks subject-matter jurisdiction to consider Petitioner's claims, as explained below, so an examination of these claims on the merits is unnecessary and improper.

The Eighth Circuit has clearly stated: "If the prisoner is not challenging the validity of his conviction or the length of his detention . . . then a writ of habeas corpus is not the proper remedy." Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996); see, also, Greene v. Gau, No. 16-cv-4329 (JRT/TNL), 2017 WL 913605, *3 (D. Minn. Feb. 15, 2017) (quoting Kruger, 77 F.3d at 1073). Neither of Petitioner's arguments challenges the validity of his conviction or the length of his detention.

With respect to Petitioner's argument regarding a future finding by the DOC that a refusal to admit that he sexually abused his grandson violates the conditions of his release, this Court has previously held that challenges to the terms of a supervised release plan are "challenge[s] to the conditions of . . . confinement, rather than to the legality or duration of [a] sentence." See, Shannon v. Roy, No. 11-cv-3262 (JRT/FLN), 2012 WL 3779145, *3 (D. Minn. Aug. 15, 2012) (finding that a challenge to terms of intensive supervised release was properly brought under 42 U.S.C. 1983, rather than in an action for a writ of habeas corpus), report and recommendation adopted at 2012 WL 3779212 (D. Minn. Aug. 31, 2012).

As to Petitioner's argument involving the 1-year extension of his projected release date, the Court notes that Plaintiff describes the situation as: "For [the refusal to admit to sexually abusing his grandson], I got 1 year in Faribault Prison." (Brief, [Docket No. 3]). This, however, is an imprecise characterization. Petitioner's sentence was not extended by any length of time; rather, the date on which he would be released to serve the rest of his sentence in the community under certain conditions was postponed. (See, [Docket No. 9-1], 86, 109 (showing that the date on which he was anticipated to complete his sentence was not extended by the postponement of his projected release date in June 2016)). There is no evidence in the record now before the Court

that the overall duration of Petitioner's sentence was lengthened at the time that his anticipated date of release onto supervised supervision was postponed in 2016.

Moreover, even liberally construing the Petition presently before the Court, Petitioner simply does not ask the Court to order his immediate or more speedy release; thus, he is not seeking habeas relief. See, Preiser v. Rodriguez, 411 U.S. 475, 494 (1973) (noting that "the traditional purpose of habeas corpus" is to attack "the fact or length of his confinement" and "seek immediate or more speedy release"); Otey v. Hopkins, 5 F.3d 1125, 1130 (8th Cir. 1993) (citing Preiser and stating: "The central focus of the writ of habeas corpus is to provide a remedy for prisoners who are challenging the fact or duration of their physical confinement and are seeking immediate release or a speedier release.").

A writ of habeas corpus, such as Petitioner seeks in the present case, is not the appropriate vehicle by which to attain relief for the claims Petitioner asserts in the present case, and the Court therefore lacks subject-matter jurisdiction over the case. See, Kruger, 77 F.3d at 1073 ("Where petitioner seeks a writ of habeas corpus and fails to attack the validity of his sentence or the length of his state custody, the district court lacks the power or subject matter jurisdiction to issue a writ [and] the district court should . . . dismiss[] the petition for a writ of habeas corpus for lack of subject matter jurisdiction.").

Accordingly, because the claims contained in the present Petition, even liberally construed, do not attack the validity of Petitioner's sentence or the length of his state custody, the undersigned recommends that Petitioner's Petition for Writ of Habeas Corpus, [Docket No. 1], be **denied** the matter be **dismissed without prejudice** for lack of subject-matter jurisdiction.

Finally, a § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a certificate of appealability ("COA"). See, 28 U.S.C. § 2253(c)(1); Fed. R.

App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). In the case presently before the Court, Petitioner has not even alleged the violation of a constitutional right. It is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, would treat Petitioner's current Habeas Corpus Petition differently than it is being treated here. It is therefore recommended that Petitioner should not be granted a COA in this matter.

### III. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED**;

2. This matter be **DISMISSED without prejudice** for lack of subject-matter jurisdiction; and

3. No certificate of appealability be issued.


Dated: March 29, 2018                    s/Leo I. Brisbois
                                         Leo I. Brisbois
                                         United States Magistrate Judge


### N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served

with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

11